*In re* MATTHEW B. HARRISON'S ESTATE.

Argued May 18, 1894. Reversed Aug. 16, 1894.

No. 8663.

A certain contract construed.

Appeal by Edward P. Alexander Jr., claimant, from an order of the District Court of St. Louis County, *Chas. L. Lewis*, J., made November 7, 1893, refusing a new trial.

Matthew B. Harrison since deceased entered into a contract on February 8, 1887, with certain Virginians to buy and sell real estate for them in and near Duluth. They were to furnish all the money not exceeding $250,000 and Harrison was to do all the business of buying and selling the property and repay the money invested with interest at six per cent a year and for his services have one half the net profits realized. Under this contract each Virginian was to receive a certificate showing the amount of money he paid in and certifying that he was to be repaid the money with interest. Other certificates were also to be issued stating the share of the profits each was to receive. Harrison's half of these profit certificates was to be delivered to him as follows, viz: One fourth when he should purchase the real estate. One fourth when he should sell enough property to pay back two fourths of the money invested with interest. One fourth when he should sell enough to pay back another fourth and the remaining fourth of his half of the profit certificates was to be delivered to him when he should sell enough of the property purchased to repay the entire capital invested with interest. It was further provided in the contract that Harrison's agency should be revoked by his death or insolvency and upon such revocation his rights to receive any further dividend certificates not theretofore delivered to or earned by him should cease.

Harrison then made a contract with the claimant, Edward P. Alexander, Jr., by which he agreed to assist Harrison in buying and selling property under this agreement and for his services was to have one third of the profits to which Harrison should become enti-

tled under his contract with the Virginians "to be paid when and as sales of said lands are made and as the profits thereof shall come into his (Harrison's) hands as his share thereof." Their contract contained this further clause:

"It is expressly understood and agreed that in case of the death of either said Alexander or said Harrison before said lands or all thereof are sold said Alexander or his legal representatives shall not be entitled to any interest in the profits of the part of said lands remaining unsold."

Thereafter the following purchases and sales were made: The west half of lot 87, block 18, Third Division Duluth proper, was bought for $9,375; and sold for $12,500. Lots 61, 63, West First street, Duluth proper, First Division, were bought for $35,000, and sold for $45,000. The northwest quarter of section 21, T. 50, R. 14, was bought for $56,000, and sold for $153,000, on which $23,000 was paid and a mortgage taken for the balance. This mortgage has been foreclosed and the property regained. The east half of the southwest quarter of section 10, T. 48, R. 13, Douglas Co., Wis., was bought for $1,200, and sold for $2,400. The west half of northeast quarter of southwest quarter of section 27, T. 49, R. 14, was bought for $10,000, and sold for $28,000; .$8,000 in cash, $20,000 on a mortgage which was defaulted and foreclosed. Lot 60, West Fourth street, was bought for $17,500. Lot 53, West Fifth street, was bought for $18,000. Lot 2 in section 24, and lots 1 and 2, and the north half of the northeast quarter of section 25, T. 49, R. 14, Douglas Co., Wis., commonly known as "the island property," was bought for $18,450.

Thereafter Harrison died testate February 29, 1892. His will was admitted to probate in the Probate Court of St. Louis County, and his widow, Lucy G. Harrison, received letters testamentary. Alexander presented a claim for a contingent share in the profits, if any, which the executrix might realize under his contract with the Virginians. The Probate Judge, *Phineas Ayer*, allowed his claim January 23, 1893, to one third of the profits, if any, which the executrix should realize to be paid when and as such profits should come into the hands of the executrix.

She appealed to the District Court where pleadings were framed and the issues tried and findings made and judgment ordered that

claimant is not entitled to any relief. He moved for a new trial, but was denied. He appeals.

*H. F. Greene,* for appellant.

*William Wirt Henry,* for respondent.

COLLINS, J. To correctly construe the contract made between appellant, Alexander, and respondent's testator, Harrison, we must necessarily take into consideration, for some purposes, the then existing agreement between the latter and the persons composing the land association. Alexander was informed of its contents, and knew that all of Harrison's rights and interests in the subject-matter of their later mutual contract came through the agreement with the association, and were wholly controlled by it.

By that instrument, Harrison had stipulated to act as general agent for the association in buying and selling real estate, his compensation depending upon the net gain. If the venture proved a successful one, treating all purchases and all sales as a unit, he was to have one-half of the profits. If there were no profits when all property was sold, Harrison was to receive nothing. It was agreed that to the subscribers there should be issued subscription certificates in amount equal to the amounts of their respective subscriptions, and that dividend or profit certificates should also be issued in like amounts; to be apportioned, however, half to the subscribers, and half to Harrison. The latter was entitled to receive his half as follows: One-fourth of said one-half when the land was purchased and conveyed to three trustees named in the writing, a like one-fourth when he had sold enough of the property to redeem one-half of the subscription certificates, with interest, a like one-fourth when sufficient property had been sold to redeem three-fourths of said subscription certificates, with interest, and the balance when enough property had been sold to redeem all of the subscription certificates, with interest.

These certificates evidently represented the anticipated profit, but their value was problematical,—dependent on the success of the transactions. There was also a condition that upon the revocation of Harrison's agency, by his death or insolvency, his right, or the right of any person claiming under him, to receive dividend certificates not then delivered, or required to be delivered, should cease. Manifestly, under these stipulations, Harrison secured an interest in the profits,

if there were any, in each tract of land that he purchased and caused to be conveyed to the trustees, for he was then entitled to one-fourth of one-half of the dividend certificates. His right, or the right of those claiming under him, to share in the profits to the extent of these certificates, or to the extent of subsequently issued or earned certificates, should his agency be revoked by death or insolvency, could not well be questioned. This right became fixed and was acquired as the certificates were delivered, or required to be delivered. It seems to have been made contingent on one thing only, namely, the ultimate profits. If, treating all transactions as one, profits accrued, Harrison or his representatives would be entitled to a share therein in accordance with the terms of the certificates.

In the contract between Harrison and Alexander, it was first recited that whereas the latter had rendered services to the former in and about the purchase of lands for the association under the plan we have detailed,—that is, Harrison was to receive as compensation for his services a certain share of the profits, only,—therefore, and in consideration of the services already performed by Alexander, and to be performed by him, in selling these lands, it was agreed that the former should pay to the latter when and as sales were made, and as the profits of such sales should come into his hands, one-third of said profits, as his sole compensation. It was further stipulated that in case either of the parties, Harrison or Alexander, should die before said lands or all thereof should be sold, Alexander or his representatives should not be entitled to any interest in the profits of the part of said lands remaining unsold.

Mr. Harrison died about five years after he entered into these contracts, and before all of the lands had been sold, or a profit from the purchases, as a whole, had been derived. It is this fact which has led to this litigation.

From the findings of fact it appears that Mr. Harrison purchased eight distinct parcels of land, the association paying therefor the sum of $165,525. Of these parcels, two, which together cost $10,575, were sold at a profit of $4,325. Two other parcels, which together cost $66,000, were sold at an immense profit; but the association, after realizing $31,000 in cash, was compelled to foreclose mortgages given to secure the balance due from the purchasers, and in this manner again became the owner of both tracts. One

tract, bought for $35,000, was sold after Mr. Harrison's death at a profit of $10,000. The other tracts, three in number, remain unsold. So that the association, with an investment made for it by Mr. Harrison, in his lifetime, of $165,525, in eight parcels of land, in each of which Harrison had a fixed interest as soon as he purchased, and caused them to be conveyed to the trustees, has on hand, as actual profits arising from the sale of two parcels, the sum of $4,325, and also, as cash received upon sales of land which afterwards reverted to it, the further sum of $31,000, and also, as cash profit on land sold subsequent to Mr. Harrison's decease, the further sum of $10,000. It has on hand, yet to be disposed of, five parcels of land, which cost $119,950, from which either profit or loss may come. Apparently, there is quite an amount of profit in the entire transaction, but what it may be, or that there will be a profit, is not absolutely certain until all of the property is converted into cash.

It fairly appears, taking both agreements into consideration, as we must when construing that made with Alexander, that the clause in the latter relative to the decease of either of the parties to it was simply intended to cover the contingency already provided for in Harrison's contract with the association,—that if he should die before the lands were all sold his right to recover further certificates, evidence merely of his share in anticipated profits, should cease. It differs in language, but when we consider that the details of the association contract were fully repeated, and there was a recital that Alexander had already rendered services to Harrison in and about the purchase of the association lands, it is evident that, of the profits which Harrison was to receive under his contract, he was to pay one-third to Alexander, and that this is what was understood by both parties. If this was not the understanding and intention, then the reference and recital were wholly useless, and their incorporation into the Harrison-Alexander agreement mere form. Unless this be the proper construction, there is no other which will not lead to great complication, without any beneficial results to Mr. Alexander.

From what has been said, it is evident that the order appealed from must be reversed. Alexander has a contingent claim against the Harrison estate, but out of which he cannot realize until the affairs of the association are settled, and its profits determined. If there are profits, the Harrison estate cannot be excluded from par-

ticipation; and when these profits come to it, either as profits arising from sales made when Mr. Harrison was living, or as profits growing out of the certificates which he held or was entitled to when he died, Alexander is entitled to the share provided for in his contract. The fact that the amount of the profits which may finally come to the association or to the Harrison estate cannot be ascertained until the lands are all sold cannot affect the appellant's contention that the nature or character of the gain or profit, if any there should be, is not affected by mere delay in determining its amount. Whenever it is ascertained that, taking the dealings of the association as a unit, there is a sum due to the Harrison estate, and this amount actually passes into the hands of those who may represent it, Mr. Alexander is entitled to share in that amount.

Order reversed.

BUCK, J., absent, sick, took no part.

(Opinion published 60 N. W. 24.)